No. 17,430.

ANDREW WYSOWATCKY, AS GUARDIAN, ETC. *v.* DENVER-WILLYS, INC.
(281 P. [2d] 165)

Decided March 14, 1955.

Mr. E. B. Evans, for plaintiff in error.

Mr. Max M. Glaston, for defendant in error.

*En Banc.*

Mr. Justice Knauss delivered the opinion of the Court.

Plaintiff in error by writ of error seeks reversal of a judgment of dismissal entered by the trial court in an action brought by him against defendant in error.

Plaintiff in error is the duly appointed guardian of the estate of three minors. He was appointed to succeed Buell E. Nielsen, a former guardian of said minors, who departed the jurisdiction and whose whereabouts were unknown at the time plaintiff in error was appointed guardian. It is also admitted that said Nielsen, as guardian, had an account in a Denver bank and that on March 15,

1952, he drew a check for Two Hundred Dollars against said account in favor of defendant in error, and that said check was paid by the drawee bank. The check in question had printed upon its face "Buell E. Nielsen, Guardian" and directly thereunder the guardian affixed his signature. It was also admitted there was no order of the court in which the guardianship estate was pending for the issuance by Buell Nielsen, as guardian, of any check to defendant in error.

Plaintiff in error contends "that one who cashes a check for a fiduciary in payment of a personal debt of the fiduciary or for the personal benefit of the fiduciary is put upon notice that the fiduciary may be committing a breach of his obligation and must make inquiry so as to learn the facts."

Section 5 of the Uniform Fiduciary Act, chapter 67, '35 C.S.A. [C.R.S. 1953, 57-1-5] provides:

"5. Liability of payee for check or other bill of exchange drawn by fiduciary.—If a check or other bill of exchange is drawn by a fiduciary as such, or in the name of his principal by a fiduciary empowered to draw such instrument in the name of his principal, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligations as fiduciary in drawing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. *If, however, such instrument is payable to a personal creditor of the fiduciary and delivered to the creditor in payment of or as security for a personal debt of the fiduciary to the actual knowledge of the creditor, or is drawn and delivered in any transaction known by the payee to be for the personal benefit of the fiduciary, the creditor or other payee is liable to the principal if the fiduciary in fact commits a breach of his obligation as fiduciary in drawing or delivering the instrument.*"

■■ The portion of this section emphasized is in effect an exception to the rule set forth in the preceding part of Section 5. No element of bad faith being involved, it, therefore, was the duty of plaintiff in error to show by competent evidence that the check in the instant case was delivered to defendant in error in payment of, or as security for, a personal debt of Nielsen, and that this fact was known to defendant in error, or that it was drawn and delivered in a "transaction known by the payee to be for the personal benefit" of Nielsen. Had these facts been shown, liability of defendant in error could attach. Counsel for plaintiff in error contend that "the burden of proof was upon the defendant to show that the fiduciary was not in fact committing a breach of his obligation in cashing the check." We cannot agree that the burden was upon defendant in error to show this. In order to make out a case, it was the obligation of plaintiff in error to make the necessary proof to bring the case within the emphasized portion of Section 5.

In *Union Bank & Trust Co. v. Girard,* 307 Pa. St. 488, 161 A. 865, we find this: "As the instrument was good on its face, there was no apparent reason for inquiry; it remained good until shown to have been taken in 'bad faith' and the burden of proving that was on plaintiff."

■ Several cases are cited by counsel for plaintiff in error which apparently support his contention. Some of these are from states which never adopted the uniform fiduciaries act, and the others were decided before that state adopted the uniform fiduciaries act. This act was adopted for the purpose of harmonizing the common law theory that one deals with a fiduciary at his peril, with the provisions of the uniform negotiable instruments act.

The provisions of Section 5, chapter 67, '35 C.S.A. are clear and free from ambiguity.

The purpose of the uniform fiduciaries act was aptly stated in *Union Bank & Trust Co. v. Girard,* supra, as follows: "Uniform and definite rules were found neces-

sary to take the place of diverse and conflicting rules that had grown up concerning constructive notice of breach of fiduciary obligations in order that commerce might proceed with as little hindrance as possible, and, at the same time that loss for breach of such obligation should fall on the party directly responsible for the faithless agent and not on one who was a mere conduit to transmit the fund."

In *Colby v. Riggs National Bank*, 92 F. 2d 183, it was said concerning the uniform fiduciaries act that it "relaxes some of the harsher rules which require of a bank and of individuals the highest degree of vigilance in the detection of a fiduciary's wrongdoing."

Counsel for plaintiff in error states: "Nielsen cannot be located. We cannot ascertain from him the purpose of issuing the check or whether he got cash, work, material or a used car in exchange for the check." This case cannot be decided upon presumptions or inferences and the argument of counsel for plaintiff in error that we should overrule the decision of the trial court and direct entry of judgment in favor of plaintiff in error on such intangibles is in effect an admission by counsel that he failed to prove his case. It is just as reasonable to infer, without the introduction of evidence, that the money realized on this check (if we also assume it was cashed) went to the support of the minors. As was said in *Castor v. Rice*, 71 Wyo. 99, 254 P. (2d) 189: "* * * it is now well understood that, accurately speaking, there is no such thing as 'presumption' of fact. (4 Wigmore, Ev. 2491), and the term should be discarded as useless and confusing. When used it can mean only inferences of fact, or mere arguments, which may or may not be acted upon by the jury."

No evidence was introduced showing this check, written by Nielsen on the estate account constituted breach of a fiduciary obligation or that the monies received from, or payment made by, said check were not for the benefit of the estate. This being so, and no knowledge

on the part of defendant in error of a breach of fiduciary obligation appearing, the judgment of the trial court must be and it is affirmed.